Slip Op. 15-49

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| OTTER PRODUCTS, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>            Defendant. | Before: Claire R. Kelly, Judge<br><br>Court No. 13-00269<br>Public Version |

## <u>OPINION</u>

[Plaintiff's motion for summary judgment is granted; Defendant's cross-motion for summary judgment is denied.]

Dated: May 26, 2015

<u>Louis S. Mastriani</u>, <u>Munford Page Hall, II</u>, <u>Beau A. Jackson</u>, <u>Dana L. Watts</u>, Adduci, Mastriani & Schaumberg, LLP, of Washington, DC for plaintiff.

<u>Beverly A. Farrell</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were <u>Joyce R. Branda</u>, Acting Assistant Attorney General, and <u>Amy M. Rubin</u>, Assistant Director.  Of counsel on the brief was <u>Beth C. Brotman</u>, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection of New York, NY.

Kelly, Judge: Before the court are Plaintiff's, Otter Products, LLC, ("OtterBox"), and

Defendant's, United States, cross-motions for summary judgment in this classification

dispute.  OtterBox moves for summary judgment on the two counts in its complaint

arguing that as to count one, Defendant improperly classified OtterBox's Commuter and

Defender Series cases under subheading 4202.99.9000 of the Harmonized Tariff

Schedule of the United States (2012) ("HTSUS"), which carries an ad valorem rate of

20%, and should properly classify the cases under subheading 3926.90.9980, HTSUS,

which carries an ad valorem rate of 5.3%.  With respect to count two OtterBox claims that

because the goods are properly classified under subheading 3926.90.9980, HTSUS,

Defendant "[i]n addition to the refund of the duties paid by OtterBox upon the entry and

liquidation of the subject merchandise, . . . should also refund to OtterBox all additional

overpayments of duties paid on assists . . . ." Compl. ¶ 26, Aug. 2, 2013, ECF No. 4 ("Pl.'s

Compl.").

Defendant argues that the court should deny Plaintiff's motion and grant summary

judgment in its favor because the Defender and Commuter series cases were properly

classified under subheading 4202.99.9000, HTSUS.  Defendant further argues that the

court does not have jurisdiction over Plaintiff's second count, requesting repayment of

post-importation overpaid duties, because they were voluntarily made (i.e. not a "charge

or exaction") and, in any event, OtterBox did not protest these payments.  For the reasons

set forth below, the court has jurisdiction over OtterBox's claims and finds that the subject

merchandise is properly classified under subheading 3926.90.9980, HTSUS, and that the

ad valorem rate of 5.3% applies to the entire transaction value of OtterBox's entries,

including the value of assists paid subsequent to importation.  The court will address the

Plaintiff's counts separately.

## Background

OtterBox is the owner and importer of record of the Commuter and Defender

Series cases.  OtterBox's goods were entered between April 23, 2012 and July 11, 2012

through the Port of Memphis, Tennessee, under Entry Numbers 112-7334796-8, 112-

7391483-3, 112-7967525-5, 112-8546857-0 ("Subject Entries").  Pl.'s Ex. List Ex. C Att.

1 ("Pl.'s Protest"), Oct. 9, 2014, ECF No. 25-2; Def.'s Mem. Law Opp'n Pl.'s Mot. Summ.

J. Supp. Def.'s Cross-Mot. Summ. J. 2, Dec. 17, 2014, ECF No. 37 ("Def.'s Opp'n &

Cross-Mot.").    OtterBox paid duties at the 20% ad valorem rate provided under

subheading 4202.99.9000, HTSUS, and the goods were liquidated between March 8,

2013, and May 24, 2013, at that rate.  See Def.'s Opp'n & Cross-Mot. 2; see also Pl.'s

Protest.  On July 2, 2013, Plaintiff timely filed Protest Number 2006-13-101283 covering

all four entries and requested accelerated disposition pursuant to 19 U.S.C. § 1515(b).

See Pl.'s Protest.  The protest was deemed denied on August 1, 2013.  Def.'s Opp'n &

Cross-Mot. 3.  On August 2, 2013, Plaintiff timely filed its summons contesting the denial

of its protest.  See Summons, Aug. 2, 2013, ECF No. 1.

Before importing the entries involved in this case, OtterBox learned that it had

failed to disclose and pay duties on the value of assists it provided in connection with the

manufacture of certain merchandise.  As a result of that discovery OtterBox filed a prior

disclosure on November 17, 2010 and eventually submitted the duties owed for the period

preceding its prior disclosure.  Pl.'s Compl. ¶ 8.  Subsequently, OtterBox undertook to

enter the Reconciliation Prototype so that going forward it could pay the value of assists

on reconciliation entries.[1]  Pl.'s Mem. Supp. Mot. Summ. J. 26, Oct. 9, 2014, ECF No. 25-

1 ("Pl.'s Mot. Summ. J."); 19 U.S.C. § 1484(b).  Some of the assists for the Subject Entries

---

[1] Reconciliation is "an electronic process, initiated at the request of an importer, under which the elements of an entry (other than those elements related to the admissibility of the merchandise) that are undetermined at the time the importer files or transmits the documentation or information required by section 1484(a)(1)(B) of this title, or the import activity summary statement, are provided to the Customs Service at a later time." 19 U.S.C. § 1401(s).

were included in the reconciliation entries.   Answers Questions Presented Teleconference April 2, 2015 6-8, April 17, 2015, ECF No. 50 ("Def.'s Answers Re Payment Assists").   Additionally, OtterBox made three "interim payments" for the assists supplied in connection with the Subject Entries between the time it submitted a prior disclosure and the time it was certified for the reconciliation program.[2]   The payments were made on September 29, 2011, May 7, 2012, and July 30, 2012.  Pl.'s Compl. ¶¶ 10-12.  Plaintiff's summons filed in this case does not list these reconciliation entries.[3]

## Jurisdiction and Standard of Review

The court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]," 28 U.S.C. § 1581(a) (2012)[4], and reviews such actions de novo.  28 U.S.C. § 2640(a)(1).  As will be more fully discussed below, the court exercises jurisdiction over OtterBox's count I and II because the subject matter of this case is the properly protested classification decision made by CBP which applies to the entire transaction value of the Subject Entries.  Moreover,

---

[2] While the interim payments covered assists on many different entries, here, OtterBox only seeks the refund of duties in connection with the assist payments on the Subject Entries.  See Pl.'s Compl. ¶ 26; see also Pl.'s Mot. Summ. J. 27.

[3] The assists paid in connection with the protested entries were paid through several payments in part because of the way OtterBox tracked these assists.   OtterBox has explained that it tracks assists as "projects" which may consist of multiple stock keeping units ("SKU") numbers.  See Def.'s Answers Re Payment Assists 3.  A consumption entry may have any number of projects or SKUs associated with it.  Id. at 3-4. Therefore, the duty payment for assists for a particular consumption entry may have been made over one or more interim payments and/or one or more reconciliation entries.

[4] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

OtterBox has paid all liquidated duties on the Subject Entries in accordance with 28 U.S.C. § 2637(a).

The court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a).  A classification decision involves two steps.  First, the court determines the proper meaning of the tariff provisions, a question of law.  See Link Snacks, Inc. v. United States, 742 F.3d 962, 965 (Fed. Cir. 2014).  Second, the court determines whether the subject merchandise properly falls within the scope of the tariff provisions, a question of fact.  Id.  Where no genuine "dispute as to the nature of the merchandise [exists], then the two-step classification analysis collapses entirely into a question of law." Id. at 965-66 (citation omitted).  The court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

## DISCUSSION

### Count I

While the Plaintiff and Defendant describe the merchandise differently, the material facts as to the nature of the subject merchandise are not disputed.  Plaintiff describes the Commuter Series cases as "durable protective products comprised of two basic pieces: a silicone mid-layer and, most importantly, a rigid outer plastic shell." Pl.'s Mot. Summ. J 1, (citing Pl.'s Ex. A. ¶ 5, Oct. 9, 2014, ECF No. 26 ("Pl.'s Ex. A"); Pl.'s Att. 1 ¶ 5).  The Commuter Series cases "have a smooth exterior, designed to allow them to slide easily

in and out of pockets." Id. (citing Pl.'s Physical Exs. 1, 3, 6, and 8, Oct. 14, 2014, ECF No. 27 ("Pl.'s Physical Ex.")).  Moreover, the plastic components of these cases "do not cover or enclose the screen" of the device but do allow the consumer "the option of affixing to the screen of the electronic device a thin, plastic, self-adhesive film to protect the screen." Id. at 1-2.

Plaintiff characterizes the Defender Series cases as consisting "of the following four pieces: a clear protective plastic membrane, a high-impact polycarbonate shell, a plastic belt clip holster, and a durable outer silicone cover." Id. at 2 (citing Pl.'s Ex. A ¶ 6; Pl.'s Physical Exs. 2, 4, 5, and 9).  Plaintiff further explains that the "hard plastic pieces" in both series of cases "are made of polycarbonate" and the "'silicone' component" in the cases "may consist of silicone, thermoplastic elastomer, or thermoset elastomer." Id. (citing Pl.'s Ex. A ¶¶ 7-8).  Finally, Plaintiff identifies the products with which the subject merchandise is used, including Defender Series cases for the Apple iPhone 4, 4S, and iPod Touch, the Nokia Lumia 900, and Commuter Series cases for the Blackberry Curve 9220, 9310, and 9320, the Samsung i500, and the HTC my Touch. Id.

Defendant emphasizes different facts when describing the merchandise.  It describes the Commuter Series cases as "com[ing] with a screen assembly" which includes "an instructional packet that includes a self-adhesive, plastic screen protector, wiping cloth, instructions and a plastic squeegee to push the plastic screen protector to avoid bubbling."  Def.'s Opp'n & Cross-Mot. 4 (citing Def.'s Ex. 1 at 12:9-13:23). Defendant also states that OtterBox markets the Commuter Series as "'[s]lim, multilayer protective cases delivers tough protection;' '2-layer protection withstands drops, bumps

and shock;' '[s]elf-adhesive screen protector guards against scratches;' and '[s]lides easily in and out of pockets.'" Id. at 4 (citing Def.'s Ex. 2).

It describes the Defender Series cases as "hav[ing] a screen built into the top or front of the case," and for Defender cases used in connection with products other than the iPod touch, the cases "come with a belt clip." Def.'s Opp'n & Cross-Mot. 3 (citing Def.'s Ex. 1 at 13:23-24, 21:18-21). Moreover, Defendant states that "Otter markets the Defender® cases for active people," Def.'s Opp'n & Cross-Mot. 3 (citing Def.'s Exs. 2-3), and describes Defender cases in connection with the iPhone 4 & 4S, "as '[a] unique multi-layer combination fit[] precisely to  undoubtedly protect' with an 'inner polycarbonate layer [that] fully encloses the iPhone.'" Id. (citing Def.'s Ex. 4).

Defendant also explains that Defender Series cases differ from Commuter Series cases because "Defenders® have their flexible silicone component on the outside while the Commuters® have their flexible silicone skin on the inner portion of the case." Id. at 3 (citing Def.'s Ex. 1 at 20:7-18).

The differences in the parties' descriptions do not arise out of any genuine dispute of material fact, but rather stem from the parties' legal dispute about which tariff heading should apply to the subject merchandise. See e.g., Def.'s Reply 4 n.2. Each party emphasizes facts consistent with its positon, but does not dispute the description of the merchandise given by the other. Defendant argues the goods are "similar containers" under heading 4202, HTSUS, using an ejusdem generis analysis which focuses on whether the merchandise shares the same essential characteristics or purposes that unite the exemplars preceding the general phrase.  As there is no genuine dispute as to the

nature of the goods, the court's analysis focuses on the legal question of whether heading

4202, HTSUS, is the proper tariff heading for the subject merchandise, or if not, which

other heading, including 3926, HTSUS, is the proper heading.

Classification of merchandise under the HTSUS is governed by the principles set

forth in the General Rules of Interpretation ("GRIs") and the Additional United States

Rules of Interpretation.  See Roche Vitamins, Inc. v. United States, 772 F.3d 728, 730

(Fed. Cir. 2014).  The GRIs are applied in numerical order beginning with GRI 1 which

provides, that "classification shall be determined according to the terms of the headings

and any relative section or chapter notes."  La Crosse Technology, Ltd. v. United States,

723 F.3d 1353, 1358 (Fed. Cir. 2013).  Where "an imported article is described in whole

by a single classification heading or subheading, then that single classification applies,

and" the GRIs other than GRI 1 are "inoperative."  Id.  The terms of the HTSUS are

construed in accordance with their common and commercial meaning, which are

presumed to be the same.  Link Snacks, 742 F.3d at 965.

Additionally, the court may look to the Explanatory Notes to help construe the

relevant chapters where appropriate.  Roche Vitamins, 772 F.3d at 731.  While the

"Explanatory Notes are not legally binding, [they] may be consulted for guidance and are

generally indicative of the proper interpretation of a tariff provision."  Id.

CBP liquidated Plaintiff's merchandise under heading 4202, HTSUS, which

provides:

4202
       Trunks, suitcases, vanity cases, attache cases, briefcases, school
       satchels, spectacle cases, binocular cases, camera cases, musical

instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:

4202.99
   Other:

      Of materials (other than leather, composition leather, sheeting of plastics, textile materials, vulcanized fiber or paperboard) wholly or mainly covered with paper:

4202.99.9000

      Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20%

HTSUS 4202.99.9000.  Plaintiff argues the subject merchandise should properly

be classified under a heading which provides:

3926
   Other articles of plastics and articles of other materials of headings 3901 to 3914:

3926.90
    Other

3926.90.99
      Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.3%

3926.90.9980       Other . . . . . . . . . . . . . . . . . . . . . . . . . X

HTSUS 3926.90.9980.

The Chapter Notes, which "have the same legal force as the text of the headings,"

Roche Vitamins, 772 F.3d at 730, provide that, "[C]hapter [39] does not cover . . . trunks,

suitcases, handbags or other containers of heading 4202."  Note 2(m) to ch. 39, HTSUS.

Thus, the court's analysis begins by determining whether the Commuter and Defender Series are classifiable in heading 4202, HTSUS.

A semicolon divides heading 4202, HTSUS, into two lists of exemplars followed by the phrase "and similar containers."  Unlike the "similar containers" following the first list of exemplars, the "similar containers" following the second list of exemplars must be made of explicitly enumerated materials—"of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper."  HTSUS 4202.  See EN 42.02.  It is undisputed that the Commuter and Defender Series cases are not made of any of these materials. Moreover, it is undisputed that none of the eo nomine articles listed in heading 4202 refer to the subject merchandise.  Thus, the court's inquiry is confined to determining whether the Commuter and Defender Series cases are "similar containers" to the exemplars listed before the semicolon.  The court finds they are not.

Where subject merchandise arguably falls under the phrase "similar containers" the court uses an ejusdem generis analysis "to determine the scope of the general word or phrase."  See Avenues in Leather, Inc. v. United States, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (citing Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995)).  In order for the Commuter and Defender Series cases to fall under the general phrase "similar containers," "the merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase."  Id. (citation omitted).  The Court of Appeals has identified at least four characteristics of the

relevant exemplars for the court to examine: organizing, storing, protecting, and carrying. See e.g. Avenues In Leather, 423 F.3d at 1331.

However, "the unifying characteristics may consist of both affirmative features and limitations." Victoria's Secret Direct, LLC v. United States, 769 F.3d 1102, 1107 (Fed. Cir. 2014). For example, where the subject merchandise "has a specific and primary purpose that is inconsistent with that of the listed exemplars in a particular heading," a classification based on the ejusdem generis characteristics of heading 4202 may be inappropriate. Avenues in Leather, 423 F.3d at 1332-33 (citation omitted); see also Victoria's Secret Direct, 769 F.3d at 1107-08.

The court's analysis begins with the meaning of the phrase "similar container." The Oxford English Dictionary defines the word "container" to mean "[h]e or who that which contains, esp. a receptacle designed to contain or store certain articles; . . . ." See Container, n., Oxford English Dictionary, http://www.oed.com/view/Entry/40046?rskey=edYinG&result=1#eid (last visited May 18, 2015). It also defines "similar" as "1. Of the same substance or structure throughout; homogenous; esp. *similar parts*. 2.a. Having a marked resemblance or likeness; of a like nature or kind." Similar, adj. and n. Oxford English Dictionary, http://www.oed.com/view/Entry/179873?redirectedFrom=similar#eid (last visited May 18, 2015). Similarly, Merriam-Webster defines "container" to mean "an object (such as a box or can) that can hold something . . . ." See Container, Merriam-Webster, http://www.merriam-webster.com/dictionary/container (last visited May 4, 2015). Thus, in order to be a "similar container" the court finds that merchandise must be a receptacle or

object, which resembles or is of a like nature or kind to the listed exemplars, and is designed or has the capability to contain, store, or hold certain articles. Moreover, as stated above and as the parties agree, four essential characteristics or purposes, organizing, storing, protecting, and carrying, unite the listed exemplars in heading 4202 and are relevant to the analysis of whether a good is a "similar container" to those exemplars. See Pl.'s Mot. Summ. J. 12; Def.'s Opp'n & Cross-Mot. 14. See also Avenues in Leather, 423 F.3d at 1332.

The court finds that the Commuter and Defender Series cases do not fall within the common or commercial meaning of the phrase "similar containers" as it is used in heading 4202, HTSUS. As a starting point heading 4202, HTSUS, requires a "container."[5] Admittedly discussing the meaning of the word "container" to determine the meaning of the phrase "similar container" in heading 4202, HTSUS, is only a starting point. However, some of the problems that arise from describing the electronic device cases as containers foreshadow the problems that will arise with trying to classify the cases as "similar containers" under heading 4202, HTSUS.

Even Defendant's preferred definitions illustrate the problems with describing the subject cases as "containers." Defendant's preferred definitions for container are, "a thing in which material is held or carried; receptacle" and "a thing that contains or can contain something; box, crate, can, jar, etc." Def.'s Opp'n & Cross-Mot. 10. Defendant also cites the definition of "contain," meaning "to have within; enclose." Id. The list of examples,

---

[5] Defendant begins its analysis by examining the word "container" in isolation. See Def.'s Opp'n & Cross-Mot. 10.

i.e., receptacle, box, crate, can, and jar, is not an exclusive list of items that are containers. However, it does illuminate the types of objects that are commonly thought of as containers.  In general, each of these objects allow an article to be placed inside them and/or taken out without much effort by opening or closing the receptacle.  As a related matter, the items listed in the definition cited by the Defendant all require some concurrent and relatively simple physical act to gain access to the receptacle (i.e., twisting a lid, lifting a cover).  In contrast, the cases at issue are specifically designed for and fit snuggly over particular electronic devices and do not require an action to open or uncover the item. Johnson Decl. ¶¶ 11-16.    It takes some effort to remove a case from an electronic device where the case generally remains on the device in a semi-permanent manner.  See Pl.'s Mot. Summ. J. 5, 20 (citing Johnson Decl. ¶ 19).  Although one might describe the action required to place an electronic device inside or outside the case as opening or closing, it is more common to think of the cases as an addition/accessory to the electronic device which can be added to or removed at the consumer's liking.

As stated, determining the parameters of the word container is only a first step for the court's analysis, which now turns to a discussion of whether the subject merchandise organize, store, protect, and/or carry.  Of these four essential characteristics, only one, "protecting," is clearly shared with the subject cases.  Indeed, the parties do not dispute that the subject cases "protect."  See e.g., Pl.'s Mot. Summ. J. 12 (explaining that the subject merchandise do not share three of the four unifying characteristics or purposes); Def.'s Opp'n & Cross-Mot. 15 (pointing out that Plaintiff's brief "is replete with statements" that the cases protect electronic devices and that "protection is a major marketing point.").

The subject cases do not serve any organizational purpose.  As Plaintiff points out,

organizing generally assumes holding multiple items.  See Pl.'s Mot. Summ. J. 12-14.

Plaintiff's point is supported by the common understanding of organize: "[t]o arrange into

a structured whole; to systematize; to put into a state of order; to arrange in an orderly

manner, put in a particular place or order, tidy."  Organize, v., Oxford English Dictionary,

http://www.oed.com/view/Entry/132456?redirectedFrom=organize#eid  (last  visited  May

18, 2015).  The subject cases can and do only hold one electronic device.  Even if it is

possible to organize a single item without reference to another item, the electronic devices

are not any more organized when they are in the cases.  Rather, once the sole electronic

device is placed inside the cases, it remains one article surrounded by the case that acts

like a suit of armor.  The electronic device is just as organized, tidy, arranged, or orderly

before it is placed in the cases as it is after.  The subject cases do not possess the

essential characteristic or purpose of organizing.

The cases do not possess the essential characteristic or purpose of storing either.

The common understanding of "store" implies setting something aside.  It does not include

present  use  but  looks  toward  using  whatever  item  is  stored  in  the  future.    This

understanding is supported by several definitions as well.  See Store, Merriam-Webster,

http://www.merriam-webster.com/dictionary/store  (last  visited  May  4,  2015)  ("to  put

(something that is not being used) in a place where it is available, where it can be kept

safely, etc.; to collect and put (something) into one location for future use"); Store, v.,

Oxford English Dictionary,

http://www.oed.com/view/Entry/190929?rskey=VVWlwH&result=2#eid (last visited May 4, 2015) ("4. a. To keep in store for future use; to collect and keep in reserve; to form a store, stock or supply of; to accumulate, hoard.").  However, an important characteristic of the subject cases is allowing the electronic device to remain fully functional, so that it may be used while inside the subject case.  See, e.g., Johnson Decl. ¶¶ 11, 16.[6]  This characteristic is inconsistent with the common understanding of "storing."

Finally, certain cases provide minimal carrying functionality for the electronic devices.  The belt clips used for some of the Defender Series cases add some carrying functionality to the electronic devices, but not all the subject merchandise have belt clips.  Moreover, while the cases themselves remain in use to protect the electronic devices at all times, the belt clips are removable and, even when connected, are only used or usable for brief periods where the user is in motion and has determined to place the electronic device in the belt clip, as opposed to a pocket.

Most problematic for the Defendant's preferred classification is that the enclosed electronic device remains fully functional, which is inconsistent with objects enclosed by the exemplars listed in heading 4202, HTSUS.  As explained above, the exemplars inform the court's analysis regarding which characteristics merchandise do and do not have.  See Victoria's Secret, 769 F.3d at 1107.  For example, where the subject merchandise "has a specific and primary purpose that is inconsistent with that of the listed exemplars

---

[6] Defendant does not dispute as a factual matter that the electronic devices can be used while within the cases.  Rather, it argues that this fact is not relevant to the ejusdem generis analysis.  See Def.'s Opp'n & Cross-Mot. 18-20.

in a particular heading," a classification based on the <u>ejusdem generis</u> characteristics of

heading 4202 may be inappropriate.  <u>Avenues in Leather</u>, 423 F.3d at 1332-33 (citation

omitted); <u>see also</u> <u>Victoria's Secret Direct</u>, 769 F.3d at 1107-08.  In <u>Victoria's Secret</u>, the

Court of Appeals discussed <u>ejusdem generis</u> in the context of a different HTSUS heading.

Discussing <u>Avenues in Leather</u>, the Court of Appeals explained:

> The reference to the merchandise's "primary purpose" as inconsistent with
> a particular heading's list recognizes that merchandise may well share
> affirmative features of the heading's list but have *other* features that then
> defeat "similarity" —necessarily meaning that the unifying characteristics of
> the heading's list include a limitation that excludes such other features
> (which may depend on their prominence). And, indeed, in referring to a
> purpose of the merchandise that is "inconsistent with" a heading's list, what
> the court in *Avenues in Leather* cited were cases that involved purposes
> that readily could be *added* to the affirmative functions of the listed items.
> The additional purpose of the merchandise at issue in those cases could be
> deemed "inconsistent" only because a limitation on function or purpose was
> among the heading's unifying characteristics. <u>Id.</u> at 1244, citing <u>*SGI, Inc. v.*</u>
> <u>*United States,*</u> 122 F.3d 1468, 1472 (Fed.Cir.1997) (heading covering a
> variety of cases did not cover coolers for storing and carrying food or
> beverages); <u>*Sports Graphics, Inc. v. United States,*</u> 24 F.3d 1390, 1392–93
> (Fed.Cir.1994) (similar for pre-HTSUS heading of Tariff Schedule of the
> United States (TSUS)). The court's observation that the "analysis must
> consider the imported merchandise as a whole" reinforces the point: even
> if the merchandise at issue contains certain features shared by those listed
> in a heading, the presence of other features in the merchandise "as a whole"
> may negate similarity. <u>Avenues in Leather,</u> 178 F.3d at 1246.

<u>Victoria's Secret Direct</u>, 769 F.3d at 1107-08.[7]  While the Court of Appeals agreed that

the subject merchandise shared the unifying characteristic of the articles listed <u>eo nomine</u>

---

[7] In <u>Avenues in Leather, Inc. v. United States</u>, 178 F.3d 1241, 1245 (Fed. Cir. 1999), the
Court of Appeals explained that folios which shared the "organizing, storing, protecting,
and carrying" purposes of heading 4202, were not removed from classification within that
heading because of an additional "organizational aid" purpose.  The court explained that

(footnote continued)

in the heading, i.e., body support, it found that the subject merchandise had an at least equally important function—the outwear coverage function.  None of the listed articles shared this outerwear coverage function and thus, the subject merchandise was not classifiable in the subheading as a "similar article."

Here, Plaintiff identifies another characteristic shared by the heading 4202 exemplars which the Commuter and Defender series cases do not share—"the inability to use items when inside those containers."  Pl.'s Mot. Summ. J. 18.  The exemplars "trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters" are not ones which permit the use of the enclosed item.  The electronic devices which are enclosed by the subject merchandise "retain their full, 100 percent functionality while inside an OtterBox case."  Id. at 20 (citing Johnson Decl. ¶ 10).  Not only has plaintiff identified an important characteristic and purpose of the subject merchandise, which is not shared by the heading 4202 exemplars, but the characteristic is inconsistent with one

---

these purposes and the physical characteristics of the internal binder and notepad were not inconsistent with the four essential characteristics and purposes uniting the heading 4202 exemplars.  Id.  In SGI, Inc. v. United States, 122 F.3d 1468, 1472 (Fed. Cir. 1997), the Court of Appeals explained that the coolers at issue were used for food or beverages were not classified in heading 4202, because the specific use for food and beverages was predominant over the general purposes uniting 4202.  Further, the coolers classified in that case were not classifiable under heading 4202 because none of the exemplars in heading 4202 "involve[d] the containment of any food or beverage."  In Totes, Inc. v. United States, 69 F.3d 495, 498-99 (Fed. Cir. 1995) the Court of Appeals distinguished Sports Graphics (which classified coolers and was discussed in SGI) explaining that the subject case, used to organize and store items in an automobile trunk, were not taken out of classification in heading 4202 like the coolers because the more specific description of a "similar container" predominated over the more general description as an "accessory" of a motor vehicle.  Id.

of the general purposes of heading 4202.  As discussed above, the essential characteristic or purpose of "storing" implies some future use, as opposed to present use. Thus, "storing" is, by definition, inconsistent with use.  The cases would be completely different products if they stored electronic devices by setting them aside for future use instead of allowing "100 percent functionality while inside an OtterBox case."  Pl.'s Mot. Summ. J. 20 (citing Johnson Decl. ¶ 10).

Defendant's counterarguments fail to persuade the court.  Defendant argues that the Commuter and Defender Series cases are containers "because each model is intended to enclose or hold within either a smartphone or an iPod touch®."  Def.'s Opp'n & Cross-Mot. 10.  As discussed above, whether or not the merchandise can be considered a container does not fully answer the question.  The merchandise must be a similar container. The essential characteristics and purposes that unite the 4202, HTSUS, exemplars makes clear that the subject cases are not "similar containers" within the meaning of heading 4202, HTSUS.

The parties spend significant time arguing whether the subject merchandise must possess each of the purposes uniting the exemplars or merely one of them in order to be classified as "similar containers" under heading 4202, HTSUS.  Plaintiff argues that "[i]t is well settled that the essential characteristics or purposes uniting the articles in the first clause of Heading 4202 are 'organizing, storing, protecting, and carrying various items.'" Pl.'s Mot. Summ. J. 12 (citing Avenues in Leather, Inc. v. United States, 178 F.3d 1241, 1244 (Fed. Cir. 1999)).  It further argues that the Commuter and Defender cases do not organize, store, or carry, and that each of these is an independent reason why the cases

cannot be classified under heading 4202.  See id. at 14-18.  Defendant acknowledges that this is an unresolved issue, see Def.'s Reply 6, but argues that Court of Appeals cases point to a disjunctive test.  Def.'s Opp'n & Cross-Mot. 11-14.  The court finds it unnecessary to answer the question as presented by either party because, in this case, coverings which minimally resemble containers, serve a protective purpose, and may at times serve some carrying purpose, while allowing full functionality of the enclosed merchandise are not "similar containers."

Likewise, Defendant's position that the subject cases organize or store cannot withstand scrutiny.  First, the government's definitions for "organize," and "store," strain the meaning of those phrases.  Defendant argues that the cases "organize" because "simply 'containing' items is at least a rudimentary form of organization,'" and the cases contain electronic devices.  Def.'s Opp'n & Cross-Mot. 16 (citation omitted).  It argues that the cases "store" electronic devices when the electronic devices are "not actually being used," and "are put aside and placed on a desk, or counter or nightstand."  Id. at 17.

The Defender and Commuter Series cases do not organize or store under the common meaning of those terms.  The cases do not organize electronic devices in even a rudimentary fashion.  The organizational capacity of the backpacks and beach bags in the case the government cites for this prospect, Processed Plastics Co. v. United States, 29 CIT 1129, 395 F. Supp. 2d 1296 (2005), cannot be equated to the cases at issue here.  Further, Defendant's argument that the electronic devices are stored when they are set aside on a desk, not only demands a philosophical approach to the word "store,"  but also

fails to explain why the subject cases have any involvement in the storing.  One could

"store" in this way without a case at all.

Defendant's discussion of the cases ability to carry has some merit.  Defendant

argues that the cases "carry" because they "are designed to securely hold certain

electronic devices while the user is mobile."  Def.'s Opp'n & Cross-Mot. 17.  Moreover,

Defendant points out that the Defender Cases are "equipped with a holster into which the

case holding the electronic device is securely inserted and the holster has a clip attached

to it so that it may be affixed to a belt."  Id. at 17-18 (citations omitted).  Securing is not

the same as carrying.  Moreover, while it is true that the belt clip holsters add some

carrying functionality to the electronic devices, not all the subject merchandise have

holsters.  Also, the belt clip holsters may be removed from the cases.  The product here

is not a holster, it is a protective case that can be attached to a belt clip holster.  The

protective function and the minimal carrying function is simply not enough to convince the

court the cases are "similar containers."

Defendant also rejects Plaintiff's argument that containers in heading 4202 have

another characteristic that the Commuter and Defender series cases do not possess,

which makes the cases not classifiable under 4202.  Defendant explains that the court in

Citizen Watch Co. of America, Inc. v. United States, 34 CIT __, 724 F. Supp. 2d 1316

(2010) (a case relied on by plaintiff), found that "suitability for long-term or prolonged use,"

was another essential characteristic based on a chapter note.  Def.'s Opp'n & Cross-Mot.

19.  Here, Defendant argues, there is no chapter note, or any other precedent, which

discusses the inability to use items while contained by the exemplars, as an essential

characteristic or purpose.  Id.  Further, Defendant points to certain camera and binocular cases, which it argues are specifically fitted for the articles they contain, as eo nomine articles which may allow the items to be used while contained.  Id. at 19-20 (citing NY 184647 (Aug. 7, 2002) (finding a digital camera case which allowed the digital camera to be used underwater to be a "similar container"); HQ 962634 (Oct. 25, 2001) (finding a camera housing that allowed the camera to be used in hostile environments including underwater to be a "similar container")).

Defendant's arguments on this issue miss the point.  As discussed above, an essential characteristic or purpose which limits the headings is also relevant to the ejusdem generis analysis. Victoria's Secret, 769 F.3d at 1107.  Here, retaining 100 percent functionality, is inconsistent with "storing."  Moreover, Defendant's reliance on a few Custom's rulings has minimal relevance.  "Customs rulings on merchandise are not binding on the court, and rulings such as those cited by plaintiff are not accorded deference, where, as here, they do not pertain to the merchandise under consideration." Victoria's Secret Direct, LLC v. United States, 37 CIT __, __, 908 F. Supp. 2d 1332, 1357 (2013).  Camera cases are eo nomine listed unlike electronic device cases and neither of these rulings discuss the four uniting essential characteristics or purposes of heading 4202, HTSUS.  Thus, the court is not persuaded by Defendant's citation to two rulings for underwater cameras.

For the above stated reasons, the court finds that Plaintiff has satisfied its burden to establish that the Commuter and Defender Series cases are not classifiable in heading

4202.  HTSUS Thus, the court must look elsewhere in the HTSUS to determine where the subject merchandise is properly classified.

The subject merchandise is properly classified under subheading 3926.90.9980, HTSUS. The Commuter Series cases consist of two basic components, the rigid outer plastic shell and the silicone mid-layer.  See Pl.'s Mot. Summ. J. 1; Pl.'s Att. 1 ¶ 5.  The Commuter Series cases also include "an instructional packet that includes a self-adhesive, plastic screen protector, wiping cloth, instructions and a plastic squeegee . . . ."  Def.'s Opp'n & Cross-Mot. 3 (citing Def.'s Ex. 1 at 12:9-13:23).

The Defender Series cases consist of four pieces including "a clear protective plastic membrane, a high-impact polycarbonate shell, a plastic belt clip holster, and a durable outer silicone cover."  Pl.'s Mot. Summ. J. 2 (citing Pl.'s Ex. A ¶ 6; Pl.'s Physical Exs. 2, 4, 5, and 9); Def.'s Opp'n & Cross-Mot. 3 (citing Def.'s Ex. 1 at 21:18-21).

The "silicone" component of the cases "may consist of silicone, thermoplastic elastomer, or thermoset elastomer" and the hard plastic component is made of "polycarbonate."  Pl.'s Mot. Summ. J. 2 (citing Pl.'s Ex. A ¶¶ 7-8).   All of these pieces, except the wiping cloth and instructions, are made of materials listed in chapter 39.

Headings 3901 to 3914 do not apply to the subject cases because the subject cases are not in the defined primary forms required for these headings.  At first glance, several headings in Chapter 39 jump out as potential places to classify the subject merchandise.  For example, heading 3907 provides for "Polyacetals, other polyethers and epoxide resins, in primary forms; polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms . . . ."  Heading 3910 provides for "[s]ilicones in primary forms

. . ." and heading 3911 "[p]etroleum resins, coumarone-indene resins, polyterpenes, polysulfides, polysulfones and other products specified in note 3 to this chapter, not elsewhere specified or included, in primary forms . . . ."  However, Note 6 of Chapter 39 provides that "[i]n headings 3901 to 3914, the expression 'primary forms' applies only to the following forms (a) [l]iquids and pastes, including dispersions (emulsions and suspensions) and solutions; (b) [b]locks of irregular shape, lumps, powders (including molding powders), granules, flakes and similar bulk forms."  Note 6 to ch. 39, HTSUS. Because the various components of the subject cases are not "in primary forms" none of these headings apply under GRI 1, HTSUS.

The remaining headings in chapter 39, heading 3915 to heading 3925, refer to specific items made of plastic, none of which refer to the subject merchandise.  Thus, pursuant to GRI 1, heading 3926, HTSUS, "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914," is the only heading under which the subject merchandise could be prima facie classified.

At the subheading level, subheadings 3926.10 to 3926.40, and, under 3926.90, subheadings 3926.90.10 to 3926.90.96, do not apply prima facie to the subject merchandise.  Thus, pursuant to GRI 1, HTSUS, subheading 3926.90.99 with the statistical suffix .80 (i.e., 3926.90.99.80), the subheading for "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914 . . . [o]ther . . . [o]ther . . . [o]ther"

is the only subheading which applies.[8]   The subject merchandise is thus properly classified in heading 3926.90.9980, HTSUS, pursuant to GRI 1, HTSUS.

Plaintiff argues that the subject merchandise should be classified under 3926.90.99.80, HTSUS, because, under GRI 3(b), HTSUS, the rigid plastic component of the subject merchandise imparts the essential character.   Plaintiff compares the Commuter and Defender Series cases to another line of cases it markets, the Impact Series, which consists of only molded silicone.   As Plaintiff explains, the rigid plastic component of the Commuter and Defender Series cases, "makes the[] cases weigh more, cost more, and be more effective in protecting an electronic device."  Pl.'s Mot. Summ. J. 23 (citing Johnson Decl. ¶ 33).

Defendant does not dispute any of Plaintiff's factual assertions regarding which material imparts the essential character of the cases.   Rather, Defendant explains that under its theory, the material that imparts the essential character is irrelevant.   Def.'s Reply 4 n.2.   Defendant argues that because the cases are properly classified in heading 4202, HTSUS, Chapter 39 Note 2(m) removes the cases from classification in heading 3926, HTSUS.   Moreover, Defendant takes issue with Plaintiff's analysis.   It argues that Plaintiff's comparison of the cases to other goods classified in heading 3926, HTSUS, is not relevant to an essential character analysis and Chinese and European Community decisions relied on by Plaintiff are unpersuasive and do not bind that court.

---

[8] Classification of merchandise is not based on the wording of the statistical suffixes, which are not part of the legal text of the HTSUS.  See Pillowtex Corp. v. United States, 171 F.3d 1370, 1374 (Fed. Cir. 1999).

The court agrees with Defendant that an "essential character" analysis under GRI 3(b) differs from an ejusdem generis analysis.  See e.g., Global Sourcing Group, Inc. v. United States, 33 CIT 389, 398, 611 F. Supp. 2d 1367, 1376 (2009).  However, the court has an independent obligation to determine the proper classification of the subject merchandise.  See Jarvis Clark, 733 F.2d at 876-78.  Further, as discussed above, the court finds that Plaintiff has met its burden of showing that CBP's classification of the merchandise under heading 4202, HTSUS, is not correct.  Even without the aid of Plaintiff's comparison of articles classified under heading 3926 and its comparison to foreign custom agency determinations, the court finds that the Commuter and Defender Series cases are properly classified as "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914 . . . [o]ther . . . [o]ther . . . [o]ther."

## **Count II**

Defendant argues the court lacks jurisdiction over Count II of OtterBox's complaint seeking refund of duty overpayments made on the value assists.  More specifically, Defendant argues that OtterBox's tender of duties (i.e., interim payments) on assists were voluntary, not a "charge or exaction" under 19 U.S.C. § 1514(a) and thus, cannot be subject of a protest.  Def.'s Opp'n & Cross-Mot. 22 (citing Ford Motor Co. v. United States, 463 F.3d 1286, 1296 (Fed. Cir. 2006); Brother Int'l Corp. v. United States, 27 CIT 1 (2003)).  Finally, Defendant argues that even if the duties were a "charge or exaction" Plaintiff did not raise the issue in its protest, depriving the court of jurisdiction.  Id. at 22-23.

The court has jurisdiction over the Plaintiff's claim for a refund of duties paid in connection with the Subject Entries, including duties paid post-importation. Congress provided that

> decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to . . . the classification and rate and amount of duties chargeable . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514(a). Plaintiff protested the classification of the subject merchandise, a decision of CBP listed under 19 U.S.C. § 1514(a)(2). Pl.'s Protest Att. A at 12 (claiming that "the articles are properly classified in subheading 3926.90.9980, HTSUS"). Plaintiff did not, as the Defendant notes, protest a charge or exaction. Thus, the subject matter of this case is the classification of subject merchandise.

CBP's classification decision related to the duties assessed for the entire transaction value of the goods at the time of entry, which includes the value of any assists. CBP must make separate decisions regarding classification and value. 19 U.S.C. § 1514(a)(1)-(2). Once CBP determines the components that comprise the value, it applies the classification to the entire value. 19 U.S.C. § 1500(a)-(b). Here, CBP applied the classification's rate of duty to the merchandise's transaction value, which includes the value of any assists. 19 U.S.C. § 1401a(b)(1)(C). Thus, a protest as to classification and the associated rate of duty applies to all duties paid including those paid in the form of an assist. As Plaintiff protested, and subsequently filed a summons contesting the denial of

its protest, the classification decision and liquidation of the Subject Entries is not yet final and conclusive on all parties.

Defendant argues that the court does not have subject matter jurisdiction over payments made on the value of assists because those payments were not charges or exactions.  It cites 19 U.S.C. § 1514(c)(2), stating, "[f]urther, 'protests may be filed . . . by . . . any person paying any charge or exaction.'"  Def.'s Opp'n & Cross-Mot. 22.[9]  Of course this is true.  However, the statute lists many other types of people who could file a protest, including "the importers or consignees shown on the entry papers . . . ."  19 U.S.C. § 1514(c)(2)(A).  OtterBox is the importer of record and thus was permitted to file a protest with respect to CBP's classification decision and the liquidation of its entries.

Defendant also incorrectly attempts to cast Plaintiff's payment as a voluntary tender.   The cases involving the voluntary tender of duties made pursuant to the prior disclosure procedures under 19 U.S.C. § 1592(c)(4) are inapposite.  First, Defendant quotes the Court of Appeals decision in Ford Motor Co. v. United States, 463 F.3d 1286, 1296 (Fed. Cir. 2006).  The section Defendant cites is the Court of Appeals discussion of the trial court's decision and was not the holding of the case.  Moreover, the issue in that case centered on whether the trial court abused its discretion by not allowing Ford, the defendant in a penalty suit, to amend its answer to include a counterclaim.  Ford, in fact, appears to support Plaintiff's position that one can preserve its right to obtain a refund of an overpayment when one protests the classification of the entry at issue.  Here, OtterBox

---

[9] Defendant mistakenly cites this as 19 U.S.C. § 1514(b)(2), but there is no such section of the code.

protested the classification of its merchandise.  It does not seek the return of monies voluntarily tendered, rather it seeks a refund resulting from an incorrect classification which is not yet final and conclusive because it is the subject of a valid protest.

The Defendant also cites Brother International Corp. v. United States, 27 CIT 1 (2003), however that case is also a Section 592 case where the importer claimed that it had overpaid and underpaid duties, filed a prior disclosure and sought to offset the overpayments and underpayments.  Customs denied Brother's attempt to offset and demanded a payment representing the duty owed without any offsets.  The court found that the payment was a charge or exaction.  The court finds it difficult to see why this case helps Defendant.  While Defendant cites Brother for the proposition that a voluntary tender cannot be a charge or exaction, it appears that the payment in Brother was not voluntary and therefore was a charge or exaction.  That fact sheds no light on the case before the court.  Further, citation to Brother misses the point. OtterBox paid duties due in light of the classification of its merchandise.  It protested classification.

The court notes that for jurisdictional purposes, Plaintiff's payment on the value of assists identified in the second count is superfluous, which may have created some confusion.  In disputes brought to contest the denial of a protest, the court requires payment be made on "all liquidated duties, charges, or exactions . . . at the time the action is commenced."  28 U.S.C. § 2637(a); see also DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1315 (Fed. Cir. 2006).  Here, the Plaintiff's entries were liquidated at the value listed on the entry.  See Pl.'s Protest.  It is uncontested that Plaintiff has paid these duties.  See Compl. ¶ 6, Aug. 2, 2013, ECF No. 4; Answer ¶ 6, Nov. 25, 2013, ECF No.

14.   Thus, Plaintiff exhausted its administrative remedies with regards to the Subject Entries by paying "all liquidated duties" by August 2, 2013, "the time the action [was] commenced."[10]

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for summary judgment is granted and Defendant's cross-motion is denied.  Judgment will enter accordingly.


_____/s/ Claire R. Kelly_____
Claire R. Kelly, Judge


Dated: May 26, 2015
New York, New York

---

[10] It is unclear if Plaintiff believes the court should exercise jurisdiction over two reconciliation entries but the court clearly cannot.  Plaintiff explains that it paid at least some of the value of assists for its third and fourth entries on two reconciliation entries. A reconciliation entry "is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest."   19 U.S.C. § 1401(s); 19 U.S.C. §1514(a)(5).   The Summons, which is the initial pleading in a suit challenging the denial of a protest, see DaimlerChrysler Corp., 442 F.3d at 1317-18, lists only one protest, 2006-13-101283. This protest, which forms the subject matter of this lawsuit, was filed on July 2, 2013 and was deemed denied on August 1, 2013.  See Summons, Aug. 2, 2013, ECF No. 1; see also Pl.'s Ex. C at Att. 1 ("Pl.'s Protest").   Reconciliation entry numbers 112-1776985-4 and 112-2136079-9 were entered on November 27, 2013 and March 4, 2014, well after OtterBox's protest was filed.  See Pl.'s Ex. Q at OTRBX4-000122; Pl.'s Ex. R at OTRBX4-000080.  OtterBox's protest could not have challenged the relevant reconciliation entries as they were not yet filed and they are not the subject of this case.  Thus, the court does not have jurisdiction over these reconciliation entries.  The court notes however that the classification of the merchandise applies to the entire transaction value including the value of assists.