**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before the Honorable Claire R. Kelly**

| | |
|---|---|
| OTTER PRODUCTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 13-00269 |

**PLAINTIFF'S MOTION TO ENFORCE**
**THE COURT'S JUDGMENT**

Plaintiff Otter Products, LLC ("OtterBox") hereby requests the Court enforce its opinion and order issued June 2, 2015 (ECF 56), as sustained by the Federal Circuit's opinion and judgement of August 24, 2016 (ECF 61), and clarified by the Court's Memorandum and Order of February 1, 2017 (ECF 67). At turn after turn Defendant has resisted and objected to granting OtterBox the full relief to which it is entitled, and has stalled in implementing this Court's clear orders to grant OtterBox that relief. For five years, Defendant has consistently ignored, and intentionally misled OtterBox. Specifically, Defendant continues to deny OtterBox refunds pertaining to a single, but substantial, prior disclosure within the scope of this Court's orders and the Federal Circuit's judgment. This prior disclosure, unlike the others before the Defendant, was improperly closed by Defendant during the pendency of this litigation notwithstanding having been given express notice of the underlying litigation challenging the classification of the imported goods in question. Defendant's actions have finally forced OtterBox to return to the Court to again request the Court to order Defendant to comply with the order and judgment.

## I.  INTRODUCTION

### A.  Legal History

On August 2, 2013, OtterBox filed a Summons and Complaint challenging Customs and Border Protection's ("CBP") classification of OtterBox's Commuter Series® and Defender Series® durable protective covers for smartphones and other electronic devices. The Summons specifically listed four entries tied to one protest as examples of CBP's incorrect classification of OtterBox merchandise entering through the Port of Memphis. ECF 1, 4. The Complaint set forth that OtterBox filed a prior disclosure letter regarding underpayment of duties on assists of the subject entries on November 17, 2010, and had subsequently submitted a series of payments on duties for assists. In addition, OtterBox specifically requested in Count II of the Complaint that Defendant "refund to OtterBox all additional overpayments of duties paid on assists, with all applicable interest."

The Court agreed with OtterBox's contentions, holding that "the subject merchandise is properly classified under subheading 3926.90.9980, HTSUS, and that the ad valorem rate of 5.3% applies to the entire transaction value of OtterBox's entries, including the value of assists paid subsequent to importation"—that is, that refunds were also due to OtterBox on overpayments made as a result of the prior disclosures. ECF 56, Slip Op. 15-49 at 2. Defendant appealed the Court's classification holding to the Federal Circuit, which affirmed the Court's judgment classifying the subject merchandise under subheading 3926.90.9980 of the HTSUS. ECF 61, ECF 62.

Tellingly, Defendant did not appeal the Court's order to issue "a refund of all duties overpaid, plus interest, as provided by law". It instead subsequently sought to limit the Court's judgment, requesting that this Court "clarify" the "specific amount of overpaid duties that should be refunded to plaintiff" and in so doing exclude from that calculation two "reconciliation entries that were entered well after the protest giving rise to the Court's jurisdiction had been filed." ECF

63. The Court rightly found that its opinion "sp[oke] for itself on the issue of whether the judgment requires a refund of overpayment of duties associated with post-entry tenders," and because OtterBox "had already or would cooperate to exchange all necessary disaggregated information to calculate the assists associated with Plaintiff's entries," denied Defendant's motion. ECF 67.

Consistent with its representations to the Court, OtterBox meticulously, constantly, and thoroughly provided all necessary information to CBP ports and headquarters over the course of several years, as discussed in detail below. CBP informed OtterBox it would first process the numerous protested entries and calculate the amount of overpaid duties and applicable interest. Only after the totality of the entries were processed and the refunds made, would CBP turn to processing and refunding the overpaid duties on the assists.

### B. The Parties' Attempts to Resolve the Recalculation

The prior disclosure discussed in OtterBox's Complaint was one of four prior disclosures OtterBox filed related to its protective cases. To date, OtterBox has received refunds with respect to the principal three of these four prior disclosures, which were filed with, and paid by, CBP Anchorage and CBP Los Angeles (LAX).[1] This motion to enforce the Court's judgment pertains to the fourth prior disclosure, also filed with CBP Los Angeles (LAX).

On December 5, 2013, after filing its Summons and Complaint in the underlying litigation, OtterBox submitted a prior disclosure concerning the classification of certain retail kits containing electronic device cases and associated attachments and components entered by TreeFrog

---

[1] CBP has yet to refund interest on the three otherwise-resolved prior disclosures. The Government contends that interest on post-entry tenders is not "provided by law," and therefore not required by the Court's judgment, which granted OtterBox "a refund of all duties overpaid, plus interest, *as provided by law*." (emphasis added). OtterBox continues to engage with CBP to resolve this disagreement without further action by the Court, but if the parties cannot reach agreement, OtterBox reserves its right to file a second motion to enforce the Court's judgment as relates to that issue.

Developments, Inc. d/b/a LifeProof[2] at the Port of Los Angeles International Airport (LAX). Prior Disclosure Case No. 2013-1209-162817, Exhibit 1. Specifically, LifeProof stated that it entered certain iPad retail kits pursuant to subheading 3926.90.9980, HTSUS, rather than CBP's then-preferred classification pursuant to subheading 4202.99.9000, HTSUS. LifeProof also admitted to classifying additional iPhone and iPod Touch retail kits pursuant to their component parts, rather than in accordance with the classification of the electronic device cases that provided their essential character pursuant to GRI 3(b). OtterBox ultimately tendered to CBP more than $4.5 million, representing the difference between LifeProof's classification of its merchandise and CBP's classification pursuant to subheading 4202.99.9000, HTSUS, at a 20% duty rate.

When it submitted the December 5, 2013, prior disclosure, OtterBox expressly stated therein that it "ha[d] a civil action pending at the U.S. Court of International Trade challenging the HTSUS classification of similar products," and that the "ultimate resolution of that civil action could determine the future classification of products such as those that are subject to this prior disclosure." Exhibit 1 at 4, fn 1. Accordingly, from the time of the initial prior disclosure, the Fines, Penalties, and Forfeitures ("FP&F") office at Los Angeles/Long Beach had been alerted to and was expressly aware of the fact that OtterBox was contesting the classification upon which the calculation of the loss of revenue was based and that OtterBox/LifeProof would seek a refund of any overpayment. OtterBox had taken the same steps to provide notice to CBP with respect to its three other related prior disclosures, and the relevant FP&F offices in Anchorage and Los Angeles (LAX) kept those prior disclosures open pending a final court decision.

---

[2] In May 2013, an OtterBox sister company purchased all issued and outstanding shares of LifeProof. OtterBox completed a transfer of all relevant operations and assets of LifeProof into OtterBox in 2014.

4

In ongoing communications with CBP, through counsel, OtterBox continued to apprise CBP of the status of the pending litigation underlying its December 5, 2013, prior disclosure. Despite receiving continual written litigation status notices from OtterBox, CBP nevertheless accepted the prior disclosure on November 18, 2014, and unilaterally closed the case with no penalty "by request of the import specialists at the airport." Exhibit 2. This was an error: CBP was explicitly notified of the ongoing litigation and its direct effect upon the proper classification of (and duties due on) the entries subject to the prior disclosure, the prior disclosure should not have been closed. OtterBox, through Counsel, contacted the Port in an attempt to reopen the case, but the Port was initially unresponsive. Emails between P. Hall (OtterBox counsel) and L. Essex (CBP) re: OtterBox/LifeProof Prior Disclosure Number 20131209162817 (2014-LAX-001 PRD), Exhibit 2; Emails between P. Hall (OtterBox counsel) and L. Essex (CBP) re: OtterBox/LifeProof Prior Disclosure Number 20131209162817 (2014-LAX-001 PRD), Exhibit 3. On September 11, 2015, an LAX FP&F Paralegal Specialist, Lorraine Essex, referenced as the point of contact in Mr. Thierry's 2014 letter, was notified by OtterBox of the Court's decision regarding the erroneous classification. On September 1, 2016, Ms. Essex was informed by email of the Federal Circuit's affirmance of the CIT decision. Neither she nor any other CBP LAX personnel responded to these communications. The LAX FP&F office, as well as the one in Anchorage, kept the other three prior disclosures open due to the pending litigation before this Court.

Following the conclusion of the underlying litigation, consistent with its commitment to this Court, OtterBox notified CBP of the Court's holding that the electronic device covers (on which the classification of the retail kits were based) were properly classified pursuant to subheading 3926.90.9980, HTSUS, at an ad valorem rate of 5.3%, rather than pursuant to subheading 4202.99.9000, HTSUS, at a 20% duty rate, and that OtterBox as entitled to a refund

on the post-entry tenders paid pursuant to this prior disclosure. *See, e.g.* Nov. 30, 2016 letter to FP&F Officer Robert Thierry, Exhibit 4; January 18, 2017 letter to Linda Golf, CEE, Chicago, Exhibit 5. Upon receiving OtterBox's litigation update and request for a refund of overpayments in relation to the prior disclosure improperly closed by CBP, CBP stated it would need to "send this up [the] chain and get back to [OtterBox] on it." Exhibit 2.

OtterBox continued discussions with CBP into 2020 regarding the appropriate amount of refunds on all four prior disclosures. However, between December 2016 and February 2020, numerous emails and telephone calls from OtterBox to the LAX FP&F office, specifically to Ms. Essex, and the CBP official generally overseeing the refunds of overpayments and interest, received no response whatsoever. In February 2020, CEE Specialist Linda Golf informed OtterBox that "because the case was closed and was not re-opened as we requested, she cannot process a refund until we resolve this situation with FP&F at Los Angeles/Long Beach." Emails between P. Hall (OtterBox counsel) and L. Essex (CBP) re: OtterBox/LifeProof Prior Disclosure Number 20131209162817 (2014-LAX-001 PRD), Exhibit 6. Accordingly, OtterBox yet again requested that the LAX FP&F office reopen the improperly closed prior disclosure and refund the overpayment. Ms. Essex responded for the first time in over 3 years, stating "it is difficult to reopen [a] prior disclosure", but nonetheless admitting that she was "***not aware of anything that precludes reopening [the prior disclosure].***" Emails between P. Hall (OtterBox counsel) discussing phone call with L. Essex, Exhibit 7. Ms. Essex promised to work with "the financial team" on reopening the prior disclosure. Exhibit 6.

On July 15, 2020, Ms. Essex informed OtterBox counsel that Anthony Banks, another paralegal in her office, was assigned to resolve OtterBox's December 5, 2013, prior disclosure. Mr. Banks had also processed OtterBox's other Los Angeles/LAX prior disclosure and had

arranged for the refund of the overpayments for that prior disclosure. However, Mr. Banks informed OtterBox counsel that he was not, in fact, assigned to OtterBox's December 5, 2013, prior disclosure, but a different one, and that he would discuss this prior disclosure "with other team members". Emails between L. Mastriani (OtterBox counsel) and A. Heikkinen (CBP) re: Authority, Exhibit 8.

On September 8, 2020, Ms. Essex again informed OtterBox counsel that CBP was "working diligently on the refund for the LAX case" and that she would "have a definite plan of action on it today and [would] keep [OtterBox] informed." Emails between L. Mastriani (OtterBox counsel) and L. Essex (CBP) re: Otterbox 2013-1209-162817 (2014-LAX-001 PRD), Exhibit 9. However, Ms. Essex did not contact OtterBox counsel again. Instead, Amanda Heikkinen, CBP counsel located at LAX, contacted OtterBox counsel to inform counsel that she was working with Ms. Essex on the refund and would henceforth be OtterBox's point of contact at CBP.

OtterBox counsel communicated frequently with Ms. Heikkinen by email and telephone for several months regarding the reopening of the improperly closed prior disclosure and refund. In each instance, it was OtterBox counsel that initiated communication with CBP. In response to OtterBox's numerous inquiries as to why reopening the closed prior disclosure was taking so long, Ms. Heikkinen simply stated she was working on the issues. *See, e.g.*, Emails between L. Mastriani (OtterBox counsel) and A. Heikkinen (CBP) re: Authority, Exhibit 10. In a mid-December, 2020, telephone call with OtterBox counsel, Ms. Heikkinen asked whether OtterBox would be interested in settling the outstanding refund. OtterBox counsel was surprised by this request, but promised to discuss Ms. Heikkinen's request with OtterBox.

On December 29, 2020, OtterBox counsel advised Ms. Heikkinen that OtterBox was willing to enter into good faith negotiations to settle the improper closure of the prior disclosure.

Emails between L. Mastriani (OtterBox counsel) and A. Heikkinen (CBP) re: Prior disclosure issues, Exhibit 11. OtterBox counsel received no response to this communication from Ms. Heikkinen or CBP. OtterBox counsel contacted Ms. Heikkinen again on January 8, 2021, to ask whether CBP's request to discuss settlement with OtterBox had progressed. Ms. Heikkinen replied that she was not "the deciding official" but stated that she was discussing the matter with that person within CBP and that "these matters take time". Exhibit 11. On January 11, 2021, OtterBox counsel inquired as to when the "decision maker" at CBP would make a decision on settlement but again received no response from Ms. Heikkinen or CBP. Emails between L. Mastriani (OtterBox counsel) and A. Heikkinen (CBP) re: Prior disclosure issues, Exhibit 12. Six weeks later, on February 18, 2021, OtterBox counsel inquired again as to the status of settlement discussions with respect to the improperly closed prior disclosure and the refund and interest owed for that prior disclosure. OtterBox never received any response from either Ms. Heikkinen or CBP. Exhibit 11.

To this day, the Government has refused to provide OtterBox with so much as a timeline for the refund of its overpayment on this improperly closed prior disclosure. Instead, despite having communicated that remedial action was being undertaken to cure its error, CBP has steadfastly ignored OtterBox's request, and has yet to issue the refund OtterBox is due. Thus, in the past three years, CBP has ignored numerous communications from OtterBox pertaining to refunds owed, belatedly promised action, proffered settlement as a potential resolution, and then refused to further discuss the subject. The agency's fickle behavior has undermined OtterBox's faith that the agency will promptly effectuate the Court's judgment and forced OtterBox to seek further relief from the Court.

## II.   OTTERBOX SHOULD NOT BE DENIED A REFUND BECAUSE CBP IMPROPERLY CLOSED THIS PRIOR DISCLOSURE

OtterBox should not be denied a refund because the LAX FP&F office improperly closed this case despite OtterBox's reservation of its right to a refund and CBP's receipt of express and repeated notices from OtterBox of the status of the pending litigation challenging the classification.

### A.   The Court's Judgment Requires Refund of Overpaid Post-Entry Tenders

The Court's Opinion and Judgment were clear and unequivocal: OtterBox is entitled to a refund of the full transaction value of the subject merchandise. The Opinion expressly and succinctly states that "the ad valorem rate of 5.3% applies to the entire transaction value of OtterBox's entries, *including the value of assists paid subsequent to importation*." ECF 56, Slip Op. 15-49 at 2 (emphasis added). As the Court explained, because CBP applied the classification's rate of duty to the merchandise's transaction value, which included post-tender payments, the protest as to the classification and associated rate of duty applied to "all duties including those paid in the form of an assist." *Id.* at 26. Accordingly, OtterBox is entitled to a refund of the full transaction value of the subject merchandise pursuant to the Court's order that the Defendant "reliquidate the entries covered by this action with a refund of *all duties overpaid*, plus interest, as provided by law." ECF 57 (emphasis added).

### B.   The Court's Judgment Mandates Refunds Of Over-Payments Made Under This Prior Disclosure

The refund owed to OtterBox of "all duties overpaid, plus interest" necessarily encompasses the over-payments resulting from OtterBox's LAX prior disclosure, because the entries discussed in that prior disclosure are substantially similar to, and subject to the same classification as, the merchandise covered by the representative entries in OtterBox's Summons. *See, e.g., Xerox Corp. v. U.S.*, No. SLIP OP. 04–113, 28 C.I.T. 1458, at *4 (C.I.T. 2004) (relying

on established classification of similar merchandise to assist in classification of merchandise in question). "[N]othing in the rules of the Court of International Trade explicitly requires that all the entry numbers . . . that are being challenged be listed on the summons." *Pollak Import-Export Corp. v. United States*, 52 F.3d 303, 307-08 (Fed. Cir. 1995) (finding that failure to list certain entry numbers in the summons was not a bar to relief); *see also DaimlerChrysler Corp. v. U.S.*, 442 F.3d 1313, 1317 (Fed. Cir. 2006) (reiterating that the "failure to list the individual entries in a summons did not deprive the Court of International Trade of jurisdiction over those entries"). The purpose of the summons is not to provide an exhaustive list of subject entries but simply to provide fair notice to the government of the importer's protest. *See, e.g.*, *VWP of America, Inc. v. United States*, No. 96-05-01309, 30 C.I.T. 1580, 1584-85 (C.I.T. 2006).

The four representative entries related to one protest in the summons and complaint were but a small part of the hundreds of protests filed by OtterBox, comprising over 9,000 entries of the subject merchandise erroneously classified by CBP. Moreover, CBP has willingly processed and refunded the overpayments for numerous similar entries since early 2017, in relation to three other prior disclosures, and paid the applicable interest for all overpayments made at the time of entry.[3] Therefore, OtterBox's refund should not be restricted to the four entries specifically enumerated in its Summons but extend as appropriate to include all "entries which are the subject of [the] action" and identified to CBP in relation to the Court's Judgment. *See* Compl. at Count II.

The entries subject to all four prior disclosures were explicitly and consistently identified to CBP as within the scope of this litigation—*i.e.*, a challenge to CBP's classification of OtterBox's protective cases and similar merchandise under subheading 4202.99.9000, HTSUS, at a 20% duty rate—and, indeed, as indicated above, CBP refunded overpayments resulting from the three other

---

[3] *See supra*, note 1.

prior disclosures filed by OtterBox. CBP has thus far refused to refund the fourth prior disclosure because it, unlike the other three prior disclosures, was closed as of the conclusion of this litigation. However, the closure was a result of *CBP's* error, and not by reason of any error or fault by OtterBox. The prior disclosure explicitly notified CBP that OtterBox "ha[d] a civil action pending at the U.S. Court of International Trade challenging the HTSUS classification of similar products," and that the "ultimate resolution of that civil action could determine the future classification of products such as those that are subject to this prior disclosure." Exhibit 1 at 4, fn 1. On the basis of the same statement, CBP kept open OtterBox's other prior disclosures, one of which was also filed with the LAX FP&F office of CBP. The fact that LAX FP&F kept one prior disclosure open pending the litigation before this Court, but not the other, evidences that the latter prior disclosure was closed in error. Moreover, in ongoing communications with CBP, OtterBox continued to apprise agency officials of the status of the pending litigation referenced in the prior disclosure, including the favorable ruling by this Court and culminating in the affirmance of that ruling by the Federal Circuit. Exhibits 2 - 4. CBP cannot credibly claim a lack of knowledge that OtterBox would be entitled to—and intended to claim—a refund of overpaid duties on the fourth prior disclosure if it was successful in this litigation. CBP was notified of the pending litigation, received prompt and consistent notice of its error in closing the prior disclosure, and still chooses not to remedy the error, a position not substantially justified on its face. *Shinyei Corp. of America v. United States*, No. 2010-1178, 2010 WL 4146384 at *3 (Fed. Cir. 2010) (finding that a clerical or negligent error coupled with the government's unwillingness to remedy the clear error after it was notified was unreasonable behavior).

Neither has CBP claimed that it was prevented by law or practicality from reopening the improperly closed prior disclosure. Indeed, the LAX FP&F office expressly and unequivocally

represented to OtterBox counsel that the agency was "not aware of anything that precludes reopening [the prior disclosure]," (Exhibit 7) which is supported by the agency's consideration over the past four years of whether and how to reopen the prior disclosure. As detailed above, over the past four years, various CBP officials have promised to "send this up [the] chain and get back to [OtterBox] on it" (Exhibit 2), process the refund after OtterBox "resolve[d] th[e] situation with FP&F at Los Angeles/Long Beach," work with "the financial team" to reopen it (Exhibit 6), "work[] diligently on the refund for the LAX case", and provide OtterBox with "a definite plan of action on [how to reopen the prior disclosure] today…." Exhibit 9. All of these efforts over four years support Customs ability, but lack of willingness, to reopen the prior disclosure that it closed over express notice of this litigation.

Perhaps understanding the weakness of its argument that the agency's improper closure of the prior disclosure prevented a refund, within the past year, CBP and counsel for the Government reverted to refusing to refund OtterBox's overpayments made through the improperly closed prior disclosure contending that the entries on which the prior disclosure was predicated were not the four entries identified in OtterBox's summons, and therefore this Court's judgment does not bind CBP to refunding OtterBox's overpayment. But this argument is belied by law and CBP's actions during and following this litigation. It was understood throughout the underlying litigation that the four entries in OtterBox's summons were representative entries for many thousands of entries where the incorrect classification resulted in the overpayment of duties. *See Pollak Import-Export Corp. v. U.S.*, 52 F.3d 303, 306-07 (Fed. Cir. 1995) (finding compliance with the "form, manner, and style" set forth by the Court to be a housekeeping provision and not an essential element of a claim). Over the course of three years since the Court's decision was affirmed by the Court of Appeals for the Federal Circuit, CBP proactively processed and issued to OtterBox refunds and

applicable interest on 8,944 entries. After the last of those refunds were made, CBP processed and refunded the overpaid duties on three prior disclosures, two by the Anchorage CBP FP&F office, and one by the LAX FP&F office. CBP did so notwithstanding that at least 8,900 of those entries, and the entries underpinning the three other prior disclosures, were not individually identified in OtterBox's summons.

"[I]t is well-established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (internal quotations omitted); *see also United States v. Pressman-Gutman Co., Inc.*, 34 C.I.T. 1200, n. 10 (C.I.T. 2010) ("It is black-letter law that considerations of administrative equity prohibit agencies from imposing undue hardship by suddenly chang[ing] direction, to the detriment of those who have relied on past policy.") (internal quotations omitted). CBP has not contended that the merchandise subject to OtterBox's fourth prior disclosure is dissimilar to the protective cases subject to this litigation or the other three prior disclosures, nor could it: in response to the Court's ruling that the classification was incorrect, CBP permitted OtterBox to enter the merchandise subject to the formerly-LifeProof cases subject to the fourth prior disclosure under the correct classification and rate approved by the Court. After refunding overpayments on thousands of entries, including those subject to three of OtterBox's prior disclosures, and treating additional entries of merchandise identical to that subject to the fourth prior disclosure as bound by this Court's classification, CBP's refusal to now treat the entries subject to the improperly closed fourth prior disclosure as similarly bound by this Court's judgment is arbitrary and untenable.

III.   **CONCLUSION**

Defendant's opposition to refunding the duty overpayments resulting from its fourth prior disclosure has thus far been built on contrived confusion and self-serving speculation over the Court's Opinion and Judgment, and is per se belied by the thousands of refunds, and specifically the refunds for the three prior disclosures that were properly held open pending the outcome of the underlying action. To be sure, the closure of the prior disclosure in question, coupled with the refusal to reopen it, and the patent misrepresentations and inaction by Defendant, are tantamount to contempt for this Court's jurisdiction and judgment.

The Government continues to avoid refunding the overpayments of duties made by OtterBox. Defendant's position is, and has been, inconsistent with the governing statute and regulation and is at odds with CBP practice. The Government should be ordered to immediately process the refunds to which OtterBox is entitled.

Dated:  June 2, 2021                                  Respectfully submitted,

                                                      */s/ Louis S. Mastriani*
                                                      Louis S. Mastriani
                                                      Lydia C. Pardini
                                                      Adduci, Mastriani & Schaumberg, L.L.P.
                                                      1133 Connecticut Avenue, NW, Twelfth Floor
                                                      Washington, D.C. 20036
                                                      Telephone: (202) 467-6300
                                                      E-mail: OTRBX-4@adduci.com

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before the Honorable Claire R. Kelly**

|  |  |
|---|---|
| OTTER PRODUCTS, LLC,<br><br>                                         **Plaintiff,**<br><br>            v.<br><br>UNITED STATES,<br><br>                                         **Defendant.** | **Court No. 13-00269** |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion and all other pertinent papers, it is hereby

**ORDERED** that Plaintiffs' Motion is **GRANTED**;

**ORDERED** that Defendant, together with its delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, shall reopen Prior Disclosure Case No. 2013-1209-162817; and it is further

**ORDERED** that Defendant shall reliquidate the entries covered by that Prior Disclosure with a refund of all duties overpaid, plus interest, within six months of this order.

Dated: _____          _____
       New York, NY                              Claire R. Kelly, Judge

15

## <u>CERTIFICATE OF SERVICE</u>

      Louis S. Mastriani certifies that on June 2, 2021, he served a copy of the **Plaintiff's Motion to Enforce the Court's Judgement** upon the defendant via the U.S. Court of International Trade's CM/ECF System:

      Beverly A. Farrell
      U.S. Department of Justice
      International Trade Field Office
      26 Federal Plaza
      New York, NY 10278
      (212) 264-0483
      Fax: (212) 264-1916
      Email: <u>Beverly.a.farrell@usdoj.gov</u>

                                                  <u>/s/ Louis S. Mastriani</u>
                                                   Louis S. Mastriani